UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARLOS YEFERSON REYES DELGADO (A# 216-158-531),

Petitioner,

v.

WARDEN,

Respondent.

No. 1:26-cv-05614 TLN SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding through appointed counsel in this habeas corpus action pursuant to 28 U.S.C. § 2241. The assigned District Judge referred the matter to the undersigned pursuant to Local Rule 302 and 28 U.S.C. § 636(b)(1). ECF No. 3.

**FACTUAL AND PROCEDURAL HISTORY**

**I. Factual Background**

Petitioner is a citizen and national of Venezuela who was admitted to the United States on a nonimmigrant visa on March 5, 2017. ECF No. 8 at 2, ¶ 9. Petitioner overstayed his visa and has not left the United States in the years since. Id.

Petitioner has a criminal record in the United States. Local law enforcement arrested Petitioner on April 15, 2022, for misdemeanor battery and criminal mischief involving alleged property damage of $1,000 or more. ECF No. 8 at 18. On May 16, 2022, the charges were dropped with no further action. Id. at 49.

On January 13, 2026, local law enforcement arrested Petitioner for domestic violence under Florida Statutes § 741.31. ECF No. 8 at 24. The charge was dropped on March 30, 2026, with no further action. Id. at 56. Petitioner was then transferred from a county detention facility to the custody of Immigration and Customs Enforcement ("ICE"). ECF No. 10-1 at 2-3. The Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA") on April 7, 2026, charging him as removable under 8 U.S.C. § 1227(a)(1)(B) (visa overstay). Petitioner is currently detained in the Mesa Verde Detention Facility within this judicial district. ECF No. 8 at 1, ¶ 1.

Petitioner has received two bond hearings while in ICE custody. On April 14, 2026, an immigration judge ("IJ") denied Petitioner's request for custody redetermination pursuant to 8 C.F.R. § 1236, writing in full: "No Bond-Court found Respondent to be a danger to the community." ECF No. 8 at 63. Petitioner reserved appeal but it is unclear from the record whether he did in fact appeal. Id. at 64.

On August 12, 2026, a second IJ denied Petitioner's request for bond. Id. at 73-75. Petitioner requested the hearing pursuant to 8 C.F.R. § 1003.19(e), which permits an IJ to conduct a subsequent custody redetermination on a "showing that the [noncitizen's] circumstances have changed materially since the prior bond redetermination." In support of his request, Petitioner submitted documentation that his state domestic violence charge was dropped. The IJ determined this did not constitute materially changed circumstances:

> Because the state attorney's decision to drop charges does not wipe away the underlying conduct, nor does it invalidate the continuing existence and violation of the protective order, the respondent has failed to demonstrate a materially changed circumstance that alters the core safety calculus of this Court's prior bond decision. The factual foundation regarding his dangerousness remains unchanged. Consequently, the legal threshold required to revisit and overturn the prior custody determination has not been met.

Id. at 74. Petitioner again reserved appeal, but it is also unclear from the record whether he appealed this determination.

## II. Procedural History

Petitioner, proceeding pro se, initiated this action on July 20, 2026. The previously assigned magistrate judge appointed counsel to Petitioner and granted leave to file a first

amended petition ("FAP").[1]

This action now proceeds on the operative FAP filed through counsel on August 20, 2026. ECF No. 8. Petitioner alleges that his continued detention under 8 U.S.C. § 1226(a) violates procedural due process as applied to him. Id. at 1-2, ¶ 4; id. at 6-8, ¶¶ 39-44 (applying factor test from Mathews v. Eldridge, 424 U.S. 319 (1976)). He seeks a constitutionally adequate custody hearing and contends that, "where continued physical confinement is at issue, due process requires the Government to bear the burden of establishing by clear and convincing evidence that continued detention is necessary because Petitioner presents a danger to the community or a risk of flight." Id. at 2, 9-10.

Respondent filed a short opposition answer acknowledging that Petitioner is detained under § 1226(a) but that he has received all the process he is due under the statute and the Due Process Clause. ECF No. 10. In the counseled reply, Petitioner asserts that Respondent offered no argument that the IJ's allocation of the burden on Petitioner in the two hearings "provided the constitutionally adequate process requested in the [FAP]." ECF No. 12 at 2.

## LEGAL STANDARDS

### I. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

In deciding what process is due to immigration detainees, the Ninth Circuit has assumed,

[1] On September 8, 2026, the case was reassigned to the undersigned for all further proceedings after the recusal of the previously assigned magistrate judge. ECF No. 11.

without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

## II. Statutory Immigration Framework

The Parties agree that 8 U.S.C. § 1226(a) governs Petitioner's detention. The Supreme Court discussed § 1226(a) and the statutory authority underlying Petitioner's NTA, § 1227(a), at length in Jennings v. Rodriguez, 583 U.S. 281 (2018):

> Even once inside the United States, [noncitizens] do not have an absolute right to remain here. For example, a [noncitizen] present in the country may still be removed if he or she falls "within one or more . . . classes of deportable [noncitizens]." [8 U.S.C.] § 1227(a). That includes [noncitizens] who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. See §§ 1227(a)(1), (2).
>
> Section 1226 generally governs the process of arresting and detaining that group of [non-citizens] pending their removal . . . Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of [a non-citizen] 'pending a decision on whether the [non-citizen] is to be removed from the United States.' § 1226(a). 'Except as provided in subsection (c) of this section,' the Attorney General 'may release' [a non-citizen] detained under § 1226(a) 'on ...bond' or 'conditional parole.'

Jennings, 583 U.S. at 288.[2]

"When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. The [noncitizen] will be released if he 'demonstrate[s] to the satisfaction of the

[2] The undersigned changed "alien" to "non-citizen" in these passages. This has become commonplace among jurists at the Supreme Court and Ninth Circuit in recent years. See Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'") (citing 8 U.S.C. § 1101(a)(3))); Avilez v. Garland, 69 F.4th 525 (9th Cir. 2023); Arce v. United States, 899 F.3d 796 (9th Cir. 2018).

officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding.'" Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). If a noncitizen wishes to contest the Attorney General's initial custody determination—i.e., the denial or amount of bond—the noncitizen has a right to do so before an immigration judge "any time before an order [of removal] becomes final." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). After a custody redetermination hearing, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Rodriguez Diaz, 53 F.4th at 1197 (citing 8 C.F.R. § 1003.19(e)).

## DISCUSSION

### I. Due Process Analysis

#### A. As-Applied Framework

The FAP raises an as-applied, procedural due process to Petitioner's detention under 8 U.S.C. § 1226(a). Petitioner argues that the Mathews factors demonstrate that due process requires an additional, third bond hearing in which the government bears the burden of proof by clear and convincing evidence. See ECF No. 8 at 6-9.

The Ninth Circuit's decision in Rodriguez Diaz forecloses a categorical due process right to a successive bond hearing in which the government bears the burden of proof by clear and convincing evidence solely by virtue of ongoing § 1226(a) detention. 53 F.4th at 1209-11. However, the undersigned does not read Rodriguez Diaz or other precedent as foreclosing individualized analysis as to whether, in any particular case, such a successive bond hearing is necessary to satisfy due process. See Rodriguez Diaz, 53 F.4th at 1213 ("[W]e do not foreclose all as-applied challenges to § 1226(a)'s procedures."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (Rodriguez Diaz "held only that a noncitizen detained under section 1226(a) does not have a right to a *second* bond hearing when the only changed material condition since their first bond hearing is the duration of their detention") (emphasis in original). Therefore, the undersigned will proceed to the as-applied, due process analysis.

////

////

### B. Mathews Factors

#### 1. Private Interest

Petitioner retains a general liberty interest in freedom from immigration detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. 690. Petitioner's detention, which has reached roughly six months, also implicates a liberty interest in avoiding prolonged detention. An individual's private interest in "freedom from prolonged detention . . . is unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Zadvydas, 533 U.S. at 701 (recognizing six months as a presumptively constitutional period of detention). Petitioner's private interest is further strengthened by his ties to his minor daughter, see ECF No. 8 at 68-69, and his receipt of employment authorization documents, id. at 39-40. See Morrissey, 408 U.S. at 482 (explaining that private interests include the freedom to "be gainfully employed and . . . to be with family and friends and to form the . . . enduring attachments of normal life").

In Rodriguez Diaz, the Ninth Circuit warned "not to overstate the strength" of the showing under the first Mathews factor where a noncitizen, as is the case here, has received § 1226(a)'s procedural protections. Rodriguez Diaz, 53 F.4th at 1207. "[I]n evaluating Rodriguez Diaz's interests under the first prong of the Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time [and] the further process that was available to him[.]" Id. at 1208. Thus, Petitioner's two redetermination hearings in April and August 2026, respectively, and his ability to request a subsequent bond redetermination upon a showing of changed circumstances, 8 C.F.R. § 1003.19(e), diminish his substantial private interest. Still, on balance, the undersigned finds that the first factor tilts toward Petitioner.

#### 2. Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. In Rodriguez Diaz, the Ninth Circuit held

that "existing agency procedures sufficiently protected [petitioner's] liberty interest and mitigated the risk of erroneous deprivation" where the petitioner received a bond hearing two months into his detention and an IJ denied petitioner's subsequent request for custody redetermination based on changed circumstances. 53 F.4th at 1209. Thus, Petitioner's receipt of two bond hearings significantly reduces the risk of erroneous deprivation.

Still, Petitioner maintains that the risk of erroneous deprivation is high because the IJ's dangerousness finding is unfounded:

> The second factor—the risk of an erroneous deprivation of liberty through the procedures used, and the probable value of additional or different procedural safeguards—favors Petitioner . . . . Despite two bond hearings, Petitioner remains confined based principally on allegations of dangerousness arising from criminal proceedings that did not result in a conviction. Continued detention magnifies the consequences of any error in the custody determinations and warrants meaningful consideration of current evidence bearing on dangerousness and flight risk.

ECF No. 8 at 6-7, ¶ 41; see also id. at 8, ¶ 45 (citing the IJ's "extremely sparse" written explanation as evidence of the high risk of erroneous deprivation). "But to the extent that the agency made errors of law in denying [Petitioner's] [bond] requests, these decisions would also be subject to judicial review in habeas." See Rodriguez Diaz, 53 F.4th at 1210 (9th Cir. 2022) (citation omitted); see also Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (setting out legal framework for challenges to IJ bond determinations). Petitioner's FAP does not raise a separate challenge the IJ's bond determination. The availability of this unused habeas procedure mitigates the risk or erroneous deprivation for purposes of this analysis.

Petitioner also points to Martinez v. Clark, 36 F.4th 1219, 1231 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024), as an example of the Ninth Circuit affirming that the government properly bore the burden of proof by clear and convincing evidence. ECF No. 8 at 8-9, ¶¶ 48-49. But Martinez is distinguishable in that the petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c). In holding that the Due Process Clause did not require a heightened burden of proof for prolonged § 1226(a) detention, the Ninth Circuit in Rodriguez Diaz distinguished § 1226(a) and its "detailed procedures" from § 1226(c), which "on its face offers no opportunity for release on bond." 53 F.4th at 1197, 1202. In sum, given this case's inescapable factual and legal similarities to Rodriguez Diaz, the undersigned must

conclude that the risk of erroneous deprivation is low. See Rodriguez Diaz, 53 F.4th at 1210 (concluding the risk of erroneous deprivation was "relatively small" where "the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [petitioner] the opportunity to be heard by a neutral decisionmaker") (citation omitted).

In so finding, the undersigned by no means suggests that Rodriguez Diaz forecloses this factor from ever favoring a noncitizen in an as-applied challenge to § 1226(a) detention. Due process may compel an additional hearing where the § 1226(a) detention becomes "unreasonably prolonged, whether by virtue of government delay or some other cause." Rodriguez Diaz, 53 F.4th at 1214 (quoting Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 280 (3d Cir. 2018)). It may also be appropriate for the government to bear the burden of proof where the petitioner was unlawfully denied access to § 1226(a) procedures at some point during their detention. See id. at 1211 (holding heightened burden not necessary when § 1226(a) and its procedures "have been available to the [noncitizen] from the beginning.") Section 1226(a)'s procedures may also provide inadequate safeguards where the petitioner is entitled to a pre-deprivation remedy. See Pinchi, 792 F. Supp. 3d at 1034 (Rodriguez Diaz's holding that a "bond hearing provided under section 1226(a) provides constitutionally sufficient process" is limited to "those noncitizens who have never previously been detained and released by DHS[.]"); Gagik T. v. Chestnut, No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) (Rodriguez Diaz addressed the adequacy of the burden allocation at a bond hearing for a person *already in custody*; it did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process.") (emphasis in original). However, none of scenarios on this non-exhaustive list are present here. Accordingly, the second Mathews factor favors Petitioner.

### 3. Government Interest

Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 515 (2003)). However, "[p]roviding a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose

of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020). Further, "[t]he effort and cost to provide Petitioner with [a bond hearing] is minimal[.]" Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Accordingly, the final factor favors petitioner.

### C. Conclusion

Having conducted the Mathews analysis, the undersigned concludes that the low risk of erroneous deprivation ultimately defeats Petitioner's due process claim despite his private interest in freedom from detention and the government's comparatively weak interest in continuing to detain him without a successive bond hearing, There are simply no facts in the record from which to distinguish this case from the binding precedent Rodriguez Diaz, particularly given Petitioner has received not one but two custody hearings during his six months in detention. Accordingly, the undersigned recommends that the petition be denied.

Finally, the undersigned notes again that the petition does not challenge the legal sufficiency of Petitioner's two bond hearings. These findings and recommendations do not necessarily preclude his ability to bring another § 2241 petition challenging any errors of law in these two custody redetermination proceedings. See Martinez, 124 F.4th 775 (setting out standards for challenging legal error in custody redetermination proceedings through habeas).

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's first amended petition for a writ of habeas corpus (ECF No. 8) be DENIED without prejudice.

2. The Clerk of the Court be directed to enter judgement in favor of Respondent and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to

file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 30, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE